IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


| | | |
|---|---|---|
| INTEGRATED PHYSICIAN SOLUTIONS, f.k.a. DAYTON INFANT CARE SPECIALISTS, INC., | : | |
| | : | |
| Plaintiff, | : | Case No. 3:06cv377 |
| vs. | : | JUDGE WALTER HERBERT RICE |
| DON T. GRANGER, M.D., *et al.*, | : | |
| Defendants. | : | |

---

DECISION AND ENTRY SUSTAINING, IN PART, AND OVERRULING,
IN PART, DEFENDANT GRANGER'S MOTION TO DISMISS (DOC.
#32); CONFERENCE CALL SET

---

Plaintiff, Integrated Physician Solutions ("IPS"), brings suit alleging various

wrongdoings against Defendants Don T. Granger, M.D. ("Dr. Granger" or

"Defendant"), M. David Yohannan, M.D. ("Dr. Yohannan"), Jerod M. Rone, M.D.

("Dr. Rone"), Marjorie M. Haas, M.D. ("Dr. Haas") and Dayton Newborn Care

Specialists, Inc. ("Dayton Newborn").  Drs. Granger, Yohannan, Rone and Haas are

neonatologists.  At the time of the events in dispute, Dr. Granger was the sole

shareholder, as well as an officer and director of Dayton Infant Care Specialists,

Corp. ("DICSC"), a professional medical corporation that provided services to

various hospitals, in the Dayton, Ohio, area. Doc. #36 ¶¶ 6, 85.  The other three

physicians, Drs. Yohannan, Rone and Haas (referred to collectively as the

"Physicians"), were DICSC employees. Dayton Newborn Care Specialists, Inc., is a professional medical corporation that Dr. Yohannan subsequently incorporated and of which the Physicians are currently shareholders and/or employees. Id. ¶ 33.

IPS and DICSC had previously entered into an arrangement whereby IPS agreed, among other things, to manage and administer DICSC's pediatric medical clinics.[1] It is the break-down of this agreement between IPS and DICSC that is the genesis of the present litigation. Presently before the Court is Dr. Granger's Motion to Dismiss.[2] Doc. #32.

I.     FACTS

In January, 1999, DICSC and IPS entered into a management services agreement ("DICSC/IPS Agreement" or "Agreement"),[3] wherein IPS agreed "to manage and administer pediatric medical clinics and to furnish pediatric medical practices with offices, facilities, equipment, supplies, support personnel and

_____

[1]Actually, it was IPS's predecessor that entered into the Agreement with DICSC. Doc. #36 ¶¶ 14, 16. To reduce confusion, however, the Court will refer to the current parties to the agreement in question, IPS and DICSC.

[2]The other Defendants (the Physicians and Dayton Newborn) also filed a Motion to Dismiss (Doc. #22), which the Court has sustained in a separate Opinion (Doc. #39), thus dismissing them as parties Defendant to this litigation, and leaving Dr. Granger as the only remaining Defendant herein.

As to the Court's jurisdiction, it has jurisdiction over these parties, under the diversity provisions of 28 U.S.C. § 1332.

[3]The DICSC/IPS Agreement is attached to the Amended Complaint as Exhibit A. Doc. #36, Ex. A.

management and financial advisory services" for DICSC. Doc. #36 ¶ 17.  DICSC's

obligations under the Agreement included "recruit[ing] and hir[ing] physician

employees to staff [the] pediatric medical clinics and pediatric medical practices

and . . . obtain[ing] and enforc[ing] formal written employment agreements with the

physician shareholder and with all present and future physician employees of

[DICSC]." Id. ¶ 18.  DICSC further agreed to maintain professional neonatology

service relationships with certain medical facilities, to include The Children's

Medical Center ("CMC") and Greene Memorial Hospital ("GMH"). Id. ¶ 21.  The

term of the Agreement was 40 years and was terminable by DICSC only if IPS

materially breached the Agreement or filed for bankruptcy. Id. ¶ 19.

As required by the Agreement, DICSC subsequently entered into written

employment agreements with the Defendant Physicians.  Among other provisions,

each such agreement contained a non-compete clause, which forbade them from

competing with DICSC. Id. ¶ 82.  This provision was also required by the

DICSC/IPS Agreement. Id.

In August 2006, Dr. Granger notified the Physicians that he planned to

resign and solicited their interest in purchasing DICSC. Id. ¶ 31.  Apparently

receiving no interest in his offer, Dr. Granger notified IPS, by letter dated October

2006, that he had engaged counsel to assist him in the dissolution of DICSC.[4] Id.

---

[4]Specifically, Dr. Granger's letter, which is attached to the Amended
Complaint as Exhibit B, provides that, as of December 1, 2006, he would be
leaving CMC to take an out-of-state academic position. Doc. #36, Ex. B.

3

¶ 82.

Subsequently, Dr. Granger and the Physicians agreed that the Physicians would not be bound by the terms of their non-compete agreements. Id. ¶ 73.  The Physicians then entered into contracts, either individually or through Dayton Newborn, to provide services to some of the hospitals that were formerly under contract with DICSC, using the same offices and substantially the same equipment that DICSC had previously used. Id. ¶¶ 75, 85.  At the same time, DICSC ceased furnishing physicians to provide medical services at the hospitals. Id. ¶ 75.

IPS asserts that the Defendants' actions, as set forth above, harmed IPS, in general, because DICSC was then prevented from fulfilling its obligations to IPS, under the terms of DICSC/IPS Agreement. See generally id.


II.    STANDARD FOR RULING ON MOTION TO DISMISS

The Supreme Court recently issued two cases wherein it refined the standards a court must use when faced with a motion to dismiss, under Rule 12(b)(6).

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R.

4

Civ. P. 8(a)(2) and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. __, 127 S. Ct. 1955 (2007); some citations omitted). The Court further explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S. Ct. at 1964-65 (citation omitted). On this point, the Sixth Circuit expounded by pointing out that although a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." <u>Ass'n of Cleveland Fire Fighters v. City of Cleveland</u>, 502 F.3d 545, 548 (6th Cir. 2007) (quoting <u>Twombly</u>, 127 S. Ct. at 1965).

As to the kinds of documents a Court may consider when ruling on a motion to dismiss, under Rule 12(b)(6), the Federal Rules note that a "copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. Proc. 10(c). Thus, the court may properly consider any documents attached to a plaintiff's complaint, when ruling thereon. If a plaintiff chooses not to attach certain pertinent documents to the complaint, however, a defendant may introduce those documents for the court's consideration. <u>City of Monroe Employees Ret. System v. Bridgestone Corp.</u>, 399 F.3d 651, 659 n.6 (6th Cir. 2005). "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint

5

and are central to [the plaintiff's] claim." Weiner v. Klais & Co., 108 F.3d 86, 89

(6th Cir. 1997) (quoting Venture Assoc. v. Zenith Data Sys., 987 F.2d 429, 431

(7th Cir. 1993)); see also Commer. Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d

327, 336 (6th Cir. 2007).


III.    ANALYSIS

The Plaintiff asserts five claims against Granger, to wit: (1) breach of

fiduciary duty (Count I); (2) tortious interference with the DICSC/IPS Agreement

(Count II); (3) piercing the corporate veil (Count III); (4) conspiracy (Count VII), and

(5) for an accounting (Count VIII). Doc. #36. The Defendant has moved to dismiss

all five claims, Doc. #32, and has moved to dismiss the Plaintiff's Amended

Complaint, because the Court lacks jurisdiction, since the terms of the

Agreement's arbitration clause are binding, the Agreement is not valid under the

statute of frauds, and IPS is an illegal corporation. Id. The Court will address each

such claim, in the order listed.


A.    Breach of Fiduciary Duty (Count I)

In its first claim for relief, IPS alleges that Dr. Granger, "as sole shareholder,

officer and director of [DICSC], owes a fiduciary duty to [DICSC's] creditors,

including Plaintiff." Doc. #36 ¶ 42. In support of this claim, IPS alleges that Dr.

6

Granger committed the following wrongful acts: dissolving DICSC, rendering DICSC insolvent, preventing DICSC from conducting business, and wasting, diverting and destroying all of DICSC's assets. Id. ¶¶ 43, 47, 49-51.

In his Motion to Dismiss, Dr. Granger argues that the general rule is that no fiduciary relationship exists between parties to a contract when the parties negotiate at arms' length, such as those to the present Agreement. Doc. #32 at 3-8. Dr. Granger also argues that IPS has not pled any of the exceptions to this general rule, i.e., that there was any "special trust" between the parties or that one of the parties held a position of "superiority or influence" over the other. Id.

IPS, on the other hand, argues that Ohio law recognizes that officers and directors of a corporation owe a fiduciary duty to a corporation that is insolvent or on the brink of insolvency, as well as to its creditors, to not waste corporate assets that could be used to pay corporate debts. Doc. #35 at 14-15. IPS further contends that it has adequately pled facts to support its contention that Dr. Granger had such a duty and breached it. Id.

While Dr. Granger adequately states general Ohio law,[5] IPS has properly characterized the law as it pertains to a corporate fiduciary's duty to an insolvent

---

[5]See Landskroner v. Landskroner, 154 Ohio App. 3d 471, 485-86, 797 N.E.2d 1002 (Ohio 8th App. Dist. 2003) (determining that "a fiduciary relationship [does not] exist between parties negotiating an arms-length commercial transaction") (citing Blon v. Bank One, Akron, N.A., 35 Ohio St.3d 98, 101, 519 N.E.2d 363 (1988)).

corporation.  As explained by Judge Graham of this District, the manner in which

to view such charges against such a corporate fiduciary is as follows:

> Though a corporate officer generally does not owe a fiduciary duty to
> the corporation's creditors, "[u]nder long-standing Ohio law, the
> officers and directors of a corporation that is insolvent or is on the
> brink of insolvency owe a fiduciary duty to the corporation itself and
> to its creditors not to waste corporate assets which otherwise could
> be used to pay corporate debts."

In re Nat'l Century Fin. Enter., Inc., 504 F. Supp. 2d 287, 310-11 (S.D. Ohio

2007) (quoting DeNune v. Consol. Capital of N. Am., Inc., 288 F.Supp.2d 844,

859 (N.D. Ohio 2003) (which cites Thomas v. Matthews, 94 Ohio St. 32, 47, 113

N.E. 669 (1916)); see also In re Amcast Indus. Corp., 365 B.R. 91 (Bankr. S.D.

Ohio 2007)).

Much as the plaintiff in Judge Graham's case, the Plaintiff here has satisfied

the liberal notice pleading requirements of Federal Rule of Civil Procedure 8.  IPS

has pled sufficient facts to establish the existence of a fiduciary duty, in alleging

that Dr. Granger was a corporate officer and director and that DICSC became

insolvent, as result of his actions (Doc. #36 ¶¶ 42-43), and has also adequately

pled a breach of that duty, in alleging that Dr. Granger participated in diverting,

destroying and wasting all of DICSC's assets[6] (id. ¶¶ 47, 49-51). See also In re

---

[6]The Amended Complaint appears to be alleging that the diversion and
destruction of assets (which led to the insolvency) occurred as a result of
Granger's actions that were separate and distinct from the dissolution itself. See
Doc. #36 ¶ 47 (after setting forth allegations about the dissolution in preceding
paragraphs, providing that "Granger has also aided and abetted Physicians in

8

Nat'l Century, 504 F. Supp. at 311 (determining that plaintiff had adequately pled

existence of fiduciary duty, because complaint alleged that corporation in question

was insolvent and became insolvent due to actions of defendant corporate

directors); id. at 313-14 (finding that plaintiff had adequately pled breach of

fiduciary duty by asserting that directors did not stop corporation from self-dealing

and wasting corporate assets).[7]

     IPS has alleged facts sufficient to raise its right to relief, on its breach of

fiduciary duty claim, above the speculative level on the assumption that all the

allegations in the Amended Complaint are true. Thus, Dr. Granger's Motion to

Dismiss (Doc. #32), as to IPS's first claim for relief, is OVERRULED.

---

diversion of [DICSC's] contract with CMC and other facilities and in the destruction
of [DICSC's] assets"); id. ¶ 49 ("Upon dissolution, [DICSC] will have no assets as
they will have been destroyed by Granger's actions.").

    It is unclear what kind of assets DICSC owned prior to the alleged
misconduct by Dr. Granger. The Amended Complaint refers to the contracts with
the hospitals as being "assets and revenue sources" of DICSC. It is unclear
whether these hospital contracts are "assets" capable of being either wasted or
diverted. It is also unclear whether DICSC owned other assets. The Court makes
its ruling, hereunder, on the assumption that DICSC owned assets that were legally
subject to waste and diversion and that the Defendant did waste and divert such
assets, as contemplated by the charges in the Amended Complaint.

    [7]The facts alleged in the Amended Complaint, in this case, are potentially far
more serious than the facts alleged in In re National Century Financial Enterprises,
Inc. In that case, the complaint merely alleged that the corporate directors either
knew or should have known of others' improper wasting of corporate assets. 504
F. Supp. at 313-14. Here, the Plaintiff alleges that Dr. Granger, in his role as a
corporate officer and director, directly participated in diverting, destroying and
wasting all of DICSC's assets. Doc. #36 ¶¶ 47, 49-51.

B.    Tortious Interference with Agreement (Count II)

For the reasons set forth in the Court's Opinion on the Physicians' and Dayton Newborn's Motion to Dismiss (Doc. #39 § III(D)(2)), pertaining to the conspiracy with Dr. Granger to tortiously interference with the Agreement, the Court herein finds that the factual allegations in the Amended Complaint are not sufficient to raise IPS's right to relief above the speculative level on its tortious interference claim against Dr. Granger.  Thus, Dr. Granger's Motion to Dismiss (Doc. #32) is SUSTAINED, as to Count II.

C.    Piercing the Corporate Veil (Count III)

In Count III of its Amended Complaint, IPS asserts that DICSC's corporate veil should be pierced and Dr. Granger should be held individually liable for certain of DICSC's wrongful acts. Doc. #36 ¶¶ 64-69.  As to holding an individual shareholder or officer liable for corporate misdeeds, the Ohio Supreme Court notes that a "fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation." Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos., 67 Ohio St. 3d 274, 287, 617 N.E.2d 1075 (1993) (citation omitted).  However, "[a]n exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes." Id.

10

> Under this exception, the "veil" of the corporation can be "pierced"
> and individual shareholders held liable for corporate misdeeds when it
> would be unjust to allow the shareholders to hide behind the fiction of
> the corporate entity. Courts will permit individual shareholder liability
> only if the shareholder is indistinguishable from or the "alter ego" of
> the corporation itself.

Id. (internal quotations and citations omitted); see also Corrigan v. U.S. Steel

Corp., 478 F.3d 718, 725 (6th Cir. 2007). In order to determine if a corporation's

form should be disregarded and an individual shareholder, instead, be held liable for

corporate misconduct, courts look to whether (1) control over the corporation by

the shareholder was so complete that the corporation has no separate mind, will,

or existence of its own, (2) control over the corporation by the shareholder was

exercised in such a manner as to commit fraud or an illegal act against the plaintiff,

and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

Belvedere, 67 Ohio St. 3d at 289; see also Corrigan, 478 F.3d at 724.

With regard to the second Belvedere prong, the prong about which the

parties herein dispute, most Ohio courts, subsequent to Belvedere, have read the

Ohio Supreme Court's decision therein expansively so that the second prong

applies not only to "fraud or illegal acts," but also to "other unjust or inequitable

acts." Wiencek v. Atcole Co., 109 Ohio App. 3d 240, 244-245, 671 N.E.2d 1339

(Ohio 3rd App. Dist. 1996).[8] The Sixth Circuit has also embraced this expansion

---

[8]As one appellate court opined, with supporting case cites, "[m]any appellate
districts, including ours, have defined the second prong of Belvedere as including
unjust or inequitable acts." Dombroski v. Wellpoint, Inc., 173 Ohio App. 3d 508,
516, 879 N.E.2d 225 (Ohio 7th App. Dist. 2007) (citing, in support, State v. Tri-

of the second prong. <u>Taylor Steel, Inc. v. Keeton</u>, 417 F.3d 598, 610 (6th Cir.

2005) ("[W]e find that the meaning of 'illegal act' is unsettled and anticipate that

the [Ohio] Supreme Court would agree with the overwhelming majority of courts of

appeals and interpret the second requirement of the <u>Belvedere</u> test to cover unjust

acts more broadly.").  It is this expansive reading of the second prong upon which

IPS rests its argument.

IPS alleges that the following are the wrongful acts that form the basis of its

veil piercing theory:

     a. Dissolving or purporting to dissolve [DICSC] in an attempt to
       circumvent its obligations under the Agreement;

     b. Allowing [DICSC] to cease doing business to circumvent its
       obligations under the Agreement;

     c. Failing to provide professional medical services to patients in the
       medical facilities on behalf of [DICSC] as required under the
       Agreement;

     d. Negotiating with CMC, GMH and other facilities to replace, and
       replacing services formerly provided to the facilities by [DICSC]
       under the Agreement;

     e. Agreeing that the non-competition provisions of Physicians'
       contracts would not be enforced;

     f. Wasting and diverting [DICSC's] assets, including the Agreement
       and contracts with medical facilities, for his own benefit;

---

<u>State Group, Inc.</u>, 2004 Ohio App. LEXIS 4036 (Ohio 7th App. Dist. Aug. 20,
2004); <u>Robert A. Saurber General Contractor, Inc. v. McAndrews</u>, 2004 Ohio App.
LEXIS 6476 (Ohio 12th App. Dist. Dec. 20, 2004); <u>Dalicandro v. Morrison Rd.
Dev. Co.</u>, 2001 Ohio App. LEXIS 1765 (Ohio 10th App. Dist. Apr. 17, 2001);
<u>Wiencek v. Atcole., Inc.</u>, 109 Ohio App.3d 240, 245, 671 N.E.2d 1339 (Ohio 3d
App. Dist. 1996), but contrasting <u>Collum v. Perlman</u> 1999 Ohio App. LEXIS 1938
(Ohio 6th App. Dist. Apr. 30, 1999); <u>Widlar v. Young</u>, 2006 Ohio App. LEXIS 777
(Ohio 6th App. Dist. Feb. 24, 2006) (describing these holdings as too expansive)).

     g.  Tortiously interfering with the parties' performance of [DICSC's] obligations under the Agreement;

     h.  Participating in conversion of [DICSC's] contracts with CMC and other facilities and the value, benefit and other rights accruing to Plaintiff as a result of [DICSC's] performance of its contracts;

     i.  Conspiring with Physicians as set forth in Count 7 below.

Doc. #36 ¶67; see also Doc. #35 at 20-21.  IPS concludes by arguing that, because it has alleged sufficient facts "that would lead to unfair or inequitable consequences," Dr. Granger's Motion to Dismiss should be overruled, on this point. Doc. #35 at 21 (citing Wiencek, 109 Ohio App. 3d at 244-45).  Dr. Granger argues, on the other hand, that none of the cited acts, if proven, rises to the level necessary to pierce DICSC's corporate veil. Doc. #32 at 11.

### 1.   Dr. Granger's Improper Dominion or Control over DICSC

Dr. Granger has not challenged the sufficiency of IPS's pleading of the first (or "alter ego") prong of the Belvedere test, which requires a showing that a shareholder or officer exert such complete control over a corporation that the corporation has no separate mind, will, or existence of its own.[9]  The first and second prongs, however, are connected in that they both require a showing of "control," on behalf of the alleged offender.  Ohio courts have recognized that the

---

[9]In the text of his Memorandum in Support of his Motion to Dismiss, Dr. Granger focuses solely on IPS's inability to satisfy the second prong of the test, but in a footnote, he states that this "is not to say that Defendants concede that Dr. Granger was the alter ego of [DICSC]." Doc. #32 at 11 n.4.

control that is a necessary component of the first prong is the same control that must be shown, in order to satisfy the second.  As noted by one appellate court in considering Belvedere's second prong, "the party seeking to pierce the corporate veil 'must establish that the shareholder exercised the control established under the first prong of the test to commit fraud or other wrongful conduct.'" Siva v. 1138 LLC, 2007 Ohio App. LEXIS 4202, *5 (Ohio 10th App. Dist. Sept. 11, 2007) (quoting Sanderson Farms, Inc. v. Gasbarro, 2004 Ohio App. 1296, **25-26 (Ohio 10th App. Dist. Mar. 25, 2004); see also Stypula v. Chandler, 2003 Ohio App. LEXIS 5731, **9-10 (Ohio 11th App. Dist. Nov. 26, 2003) ("The Belvedere test makes clear that only those persons who actually exercise dominion and control to commit the wrongful act may be held personally liable.").

Courts look to various factors to determine whether an individual exercised the requisite dominance and control over a corporation, to include: "(1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s)." Robert A. Saurber Gen. Contr., Inc. v. McAndrews, 2004 Ohio App. LEXIS 6476, *11 (Ohio 12th App. Dist. Dec. 20, 2004) (citing LeRoux's Billyle Supper Club v. Ma, 77 Ohio App.3d 417, 422-23,

14

602 N.E.2d 685 (Ohio 6th App. Dist. 1991)). The Court will now turn to an analysis of whether IPS has properly pled facts alleging Dr. Granger's improper control over DICSC.

Despite a recitation of the legal standards inherent in a veil piercing theory and a separate request for damages, the Court has set forth the entirety of the remainder of this claim for relief above, in the list of asserted "wrongful acts." A review of these alleged wrongful acts indicates that IPS is woefully short on allegations pertaining to Dr. Granger's improper domination and control of DICSC. The only asserted fact that could arguably support such a claim is the allegation that Dr. Granger wasted and diverted DICSC's assets for his own benefit. Doc. #36 ¶67f; see also id. ¶¶ 47, 49-51 (alleging that Dr. Granger participated in diverting, destroying and wasting all of DICSC's assets). Although this allegation pertaining to control is scant, the Court finds it sufficient to satisfy the liberal pleading standards of Rule 8, in that it is enough to raise a right to relief above the speculative level, as to the issue of Dr. Granger's control over DICSC.

2. <u>Use of Control to Commit Wrongful Corporate Acts</u>

Having found that IPS sufficiently pled the control component of the <u>Belvedere</u> second prong, the Court will now determine whether it has also satisfied the second part of that prong - - that Dr. Granger used this control over DICSC to commit wrongful acts. As previously explained, in order to satisfy this

15

requirement, IPS must show that the acts were either fraudulent, illegal or were "other unjust or inequitable acts." Wiencek v. Atcole Co., 109 Ohio App. 3d 240, 244-245, 671 N.E.2d 1339 (Ohio 3rd App. Dist. 1996).

Dr. Granger argues, in general, that none of the above-listed acts rises to the level necessary to sustain a veil piercing claim and, specifically, that "breach of contract standing alone is insufficient to . . . justify the extraordinary remedy of piercing the corporate veil." Doc. #32 at 11 (quoting Wilton Corp. v. Ashland Castings Corp., 188 F.3d 670, 673 (6th Cir. 1999)).[10] IPS claims that it did not allege that Dr. Granger breached a contract and that all of the "wrongful acts" that it did allege are sufficient, in that they "lead to unfair or inequitable consequences." Doc. #35 at 20-21 (citing Wiencek, 109 Ohio App. 3d at 244-45). The Court partially agrees with each party's argument.

_____

[10]This is not an entirely accurate statement of the current law. More recently than the Wilton Corp. decision, the Sixth Circuit has had cause to revisit this issue from the stand-point of the more expansive interpretation of the Belvedere second prong that has progressed over recent years. In Taylor Steel, Inc. v. Keeton, 417 F.3d 598 (6th Cir. 2005), the Appellate Court opined that "[b]reaches of contract . . . happen all the time in business, especially because breach might be the most efficient course of action for one party." Id. at 610. Generally, however, "[a] party who suffers a loss from a corporation's breach . . . has recourse against the corporation and its assets or guarantors," and, thus, a veil piercing claim is inappropriate. Id. at 610 (quoting Wilton Corp., 188 F.3d at 674). Nonetheless, in that case, the Court determined that the allegations of breach of contract were sufficient to satisfy the second prong of the veil piercing test, because the individual who was the sole shareholder, officer, director and employee of the company "fail[ed] to demonstrate that her breach was motivated by valid business concerns," demonstrated by her actions, which included taking steps that hindered the creditor from having fiscal recourse against her company. Id.

16

Assuming that the Plaintiff is not alleging breach of contract, as it contends, the Court concludes that it is alleging tortious interference with contract for six of the nine alleged wrongful acts, in that subparagraphs a-e and g, of paragraph 67, all allege that Dr. Granger has taken steps to circumvent or otherwise not comply with various requirements of the DICSC/IPS Agreement. Doc. #36 ¶67.[11] Whether tortious interference allegations are sufficient to satisfy the second Belvedere prong is irrelevant, though, because the Court has previously determined that the Plaintiff's tortious interference allegations hereunder are not sufficiently pled, and the Plaintiff has set forth no additional facts, in this claim, to augment its previous allegations.

---

[11]The following allegations all pertain to Dr. Granger's attempts to tortiously interfere with the DICSC/IPS Agreement:

  a.  Dissolving or purporting to dissolve [DICSC] in an attempt to circumvent its obligations under the Agreement;

  b.  Allowing [DICSC] to cease doing business to circumvent its obligations under the Agreement;

  c.  Failing to provide professional medical services to patients in the medical facilities on behalf of [DICSC] as required under the Agreement;

  d.  Negotiating with CMC, GMH and other facilities to replace, and replacing services formerly provided to the facilities by [DICSC] under the Agreement;

  e.  Agreeing that the non-competition provisions of Physicians' contracts would not be enforced;

  g.  Tortiously interfering with the parties' performance of [DICSC's] obligations under the Agreement.

Doc. #36 ¶67 (paragraph f purposely omitted).

17

Similarly, the allegation in subparagraph i that Dr. Granger conspired with the Physicians to commit certain wrongdoings, in the veil piercing context, fails for the same reasons that it fails as a self-standing claim, as more fully described below. Id. ¶67i.

The Amended Complaint also alleges that DICSC's corporate veil should be pierced, because Dr. Granger converted certain of DICSC's assets. Id. ¶67h. This allegation is a bit of a curiosity. The purpose of an attempt to pierce a corporation's veil is to affix liability for personal wrongdoing, which is made under the pretense of a corporate entity. See Belvedere, 67 Ohio St. 3d at 287. Thus, there must be an associated allegation of an underlying wrongdoing, in order for a veil piercing claim to be actionable. Nowhere in the Complaint (other than the insinuation in this one paragraph) does the Plaintiff allege a claim for conversion against either DICSC (which is not a party to this litigation) or Dr. Granger. Contra Doc. #36 at 15 (conversion claim against Physicians and Dayton Newborn). It would be of no consequence, then, for the Court to determine that DICSC's veil should be pierced based on a conversion allegation when no such claim has been made.

Thus, the only remaining alleged "wrongful act," upon which to base IPS's veil piercing theory, is that Dr. Granger wasted and diverted DICSC's assets. Doc. #36 ¶ 67f. The Plaintiff has alleged such a claim against Dr. Granger, as previously set forth in the discussion pertaining to his breach of fiduciary duty, and

18

the Court determined that such claim set forth sufficient facts to survive the Defendant's Motion to Dismiss. The Court finds that such an allegation, if proven to be true, would support a claim of unfair or inequitable consequences and is thus also sufficient to support IPS's veil piercing assertion.[12]

Therefore, the Court concludes that IPS has alleged facts sufficient to raise its right to relief, on its veil piercing theory, above the speculative level on the assumption that all of the allegations in the Amended Complaint are true, but limited only to the alleged underlying wrongful act of wasting and diverting DICSC's assets (as specified in Doc. #36 ¶ 67f). Thus, Dr. Granger's Motion to Dismiss IPS's veil piercing theory (Doc. #32), as to the alleged wrongful act of wasting and diverting DICSC's assets in IPS's third for relief, is OVERRULED, and Dr. Granger's Motion to Dismiss (Doc. #32), as to the other alleged underlying wrongful acts in IPS's third for relief, is SUSTAINED.

D.    Conspiracy (Count VII)

For the reasons set forth in the Court's Opinion on the Physicians' and Dayton Newborn's Motion to Dismiss (Doc. #39 § III(D)), pertaining to the identical allegations of conspiracy between Dr. Granger, the Physicians and Dayton

_____

[12]As far as the Court can tell, however, this assertion in the veil piercing context is simply a restatement of IPS's breach of fiduciary duty claim against Dr. Granger, in which the Plaintiff similarly alleges that "Dr. Granger's actions have wrongfully caused a waste of [DICSC's] assets and a diversion of [DICSC's] assets." Doc. #36 ¶ 50.

Newborn for the wrongful acts as are specified herein, the Court finds that the factual allegations in the Amended Complaint are not sufficient to raise IPS's right to relief above the speculative level on any of its conspiracy claims and, thus, Dr. Granger's Motion to Dismiss (Doc. #32) is SUSTAINED, as to Count VII.

 

E.    <u>Accounting (Count VIII)</u>

As its eighth claim for relief, IPS asserts a right to an accounting "as a result of [the Defendants'] efforts to divert assets, including accounts receivable." Doc. #36 ¶ 94. Dr. Granger argues that, having previously failed to establish any viable claim for relief, IPS may not now request an accounting. Doc. #32 at 15.

The Ohio Supreme Court recognizes that "the usual and normal remedy for a breach of fiduciary duty . . . is an accounting." <u>Dunn v. Zimmerman</u>, 69 Ohio St. 3d 304, 307, 631 N.E.2d 1040 (1994). Since IPS's claim for breach of fiduciary duty has survived Dr. Granger's Motion to Dismiss, his point is not well taken.

Thus, Dr. Granger's Motion to Dismiss (Doc. #32) the Plaintiff's accounting claim, as a remedy for the breach of fiduciary duty claim, is OVERRULED, and his Motion to Dismiss (Doc. #32) the Plaintiff's accounting claim, as a remedy for all other claims, is SUSTAINED.

IV.    COURT'S JURISDICTION/ARBITRATION CLAUSE

Dr. Granger next contends that this Court lacks jurisdiction over the Plaintiff's claims, because the parties to this litigation are bound by the terms of an arbitration clause contained in the DISCS/IPS Agreement. Doc. #32 at 15-17.  The Defendant seems to be basing this argument on the fact that Dr. Granger, in his professional capacity, was a signatory to the Agreement and that "no facts [have been] pled by Plaintiff that would give rise to individual liability on Dr. Granger's part by piercing the corporate veil of [DICSC]." Doc. #32 at 16 (emphasis added). IPS counters by suggesting that Dr. Granger, in his individual capacity, was not a party to the Agreement and that, under Ohio law, non-parties to an agreement may not take advantage of the terms of an agreement's arbitration clause. Doc. #35 at 27-28 (citing West v. Household Life Ins. Co., 170 Ohio App. 3d 463, 469, 867 N.E.2d 868 (Ohio 10th App. Dist. 2007); Boedeker v. Rogers, 136 Ohio App.3d 425, 429, 736 N.E.2d 955 (Ohio 8th App. Dist. 1999)).  Dr. Granger provides nothing in response.

As noted *supra*, the issue of whether Dr. Granger will incur individual liability remains to be determined.  Thus, the Court is not persuaded by his argument that IPS is bound by the arbitration clause since he, in his professional capacity, signed the Agreement and because he will not be found liable, in his individual capacity, for any of the wrongs committed hereunder.  It is Dr. Granger's burden, as the moving party, to demonstrate that he is entitled to arbitration and he has not

satisfied that burden. <u>West</u>, 170 Ohio App. 3d at 470 (holding that the burden rests upon the moving party to show that it is entitled to arbitration). Thus, the Defendant's Motion to Dismiss (Doc. #32), as to the issue of the arbitration clause, is OVERRULED.


V.      VALIDITY OF DICSC/IPS AGREEMENT

        A.      <u>Statute of Frauds</u>

        The Defendant next contends that there is no valid contract before the Court, in this matter, resting his challenge on the contention that a hand-written sum in the damages calculation of the Agreement was not filled in at the time the Agreement was signed, as required by the terms thereunder, but "apparently was calculated and filled in contemporaneously with the filing of this Complaint." Doc. #32 at 17-18 (citing Doc. #32, Ex. A (DICSC/IPS Agreement) at 42). The argument continues that the Agreement is subject to the statute of frauds and, in accordance with that statute, a writing must "state the essential terms with reasonable certainty." Id. at 18 (citing <u>Landskroner v. Landskroner</u>, 154 Ohio App. 3d 471, 483, 797 N.E.2d 1002 (Ohio 8th App. Dist. 2003)). The Defendant concludes by asserting that "[t]he damages calculation at the heart of Plaintiff's Complaint surely constitutes an 'essential term' of the purported contract" and, thus, the Agreement must fail. Id.

        In response, the Plaintiff argues that the Defendant is raising an evidentiary

22

issue (or, perhaps, an issue for summary judgment) that is not proper at this stage

of the proceedings. Doc. #35 at 28. The Court agrees. For purposes of ruling on

a Motion under Rule 12(b)(6), the Court will consider the exhibits, as attached, to

be properly part of the pleadings. See Fed. R. Civ. Proc. 10(c). Thus, the

Defendant's Motion to Dismiss (Doc. #32), as to the issue of the statute of frauds,

is OVERRULED.


       B.     IPS is an Illegal Corporation

Dr. Granger's final argument is that the Plaintiff, IPS, is an illegal

corporation, because a previous merger, involving IPS's predecessor, was "illegal

under Ohio law and thus was void *ab initio*." Doc. #32 at 18-20. The Amended

Complaint provides the following background information. Two corporations,

Dayton Infant Care Specialists, Inc. (a professional corporation), and Pediatric

Physician Alliance, merged and became known as Pediatric Physician Alliance. Doc.

#36 ¶¶ 1, 14. This merged organization, Pediatric Physician Alliance, was the

predecessor to Plaintiff IPS. Id. ¶ 1.

The Defendant now argues that "[i]n the course of the [above described]

transaction, the physician-shareholders of Dayton Infant Care Specialist, Inc.,

voluntarily transferred their stock to non-professionals," citing "Exhibit A,

Agreement and Plan of Merger, § 2.7," in support. Doc. #32 at 19. The thrust of

the Defendant's argument here is on the illegality of the physician-shareholders of

the professional corporation, Dayton Infant Care Specialists, Inc., voluntarily transferring their stock to non-professionals, in violation of Ohio law. Id. at 18-19 (citing Ohio Rev. Code Ann. § 1785.07).

In response, the Plaintiff argues, among other things, that the Defendant is relying on a merger document that is neither part of the record nor central to the Plaintiff's claims, and that reliance on such documentation is improper, in considering a motion under Rule 12(b)(6). Doc. #35 at 29-30 (citing Morrison v. Circuit City Stores, Inc., 70 F. Supp. 2d 815, 819 (S.D. Ohio 1999)).  The Plaintiff further argues that it must be given an opportunity to conduct discovery and present its side of the story, should the Court decide to convert the Defendant's Motion to Dismiss into a Motion for Summary Judgment. Id.

The Court agrees with the Plaintiff.  Not only is the Defendant relying on a merger document that is not attached to the pleadings, but, despite the reference to the document as an "exhibit," no such exhibit is attached to the Motion to Dismiss.  Since the Defendant has based its argument on a document that does not comport with the requirement of the Federal Rules of Civil Procedure, see Fed. R. Civ. Proc. 10(c), 12(b)(6), the Defendant's Motion to Dismiss (Doc. #32), as to its claim that IPS is an illegal corporation, is OVERRULED, without prejudice to renewal in the form of a motion for summary judgment, after the close of discovery.

VI.     CONCLUSION

The Defendant's Motion to Dismiss (Doc. #32) is OVERRULED, in part, and

SUSTAINED, in part, as follows:

•       As to Count I of the Amended Complaint, the Motion is OVERRULED;

•       As to Count II of the Amended Complaint, the Motion is SUSTAINED;

•       As to Count III of the Amended Complaint, the Motion is OVERRULED, as to
        the alleged wrongful act of wasting and diverting DICSC's assets, and
        SUSTAINED, as to the other alleged wrongful acts;

•       As to Count VII of the Amended Complaint, the Motion is SUSTAINED; and

•       As to Count VIII of the Amended Complaint, the Motion is OVERRULED, as a
        remedy for the breach of fiduciary duty claim, and OVERRULED, as a remedy
        for all other claims.

As to Defendant's claim that the Court does not have jurisdiction of the

claims in the Amended Complaint, because the arbitration provision in the

DICSC/IPS Agreement controls, Defendant's Motion to Dismiss is OVERRULED.  As

to Defendant's claim that the DICSC/IPS Agreement is invalid, under Ohio's statute

of frauds, Defendant's Motion to Dismiss is OVERRULED.  As to Defendant's claim

that Plaintiff is an illegal corporation, Defendant's Motion to Dismiss is

OVERRULED.

Counsel for the <u>remaining</u> parties will note that a telephone conference call will be convened with the Court and counsel, at 4:30 p.m., on Wednesday, April 9, 2008, to discuss dates leading to the resolution of this litigation.

March 25, 2008

   /s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record